UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DARRYL DARMONT SHIRLEY**, <br><br>                              Petitioner, <br><br>  v. <br><br> **JAMES A. YATES, et al.**, <br><br>                              Respondents. | No. 2:07-cv-01800-AK <br><br> **ORDER** |

Petitioner Darryl Shirley claims his constitutional rights were violated when the prosecutor in his case struck two black jurors from the venire. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may not grant a state prisoner's habeas petition unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The inquiry begins with "the last explained state-court judgment," Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (emphasis omitted); accord Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). In this case, that's the decision of the California Court of Appeal denying petitioner's claim.

Legal framework.

Batson v. Kentucky, 476 U.S. 79, 93–94 (1986), sets out a three-step burden-shifting framework for claims of discriminatory juror strikes.  At Step 1, a defendant must establish a prima facie showing that "the totality of the relevant facts gives rise to an inference of discriminatory purpose."  Id.  At Step 2, "the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes."  Johnson v. California, 545 U.S. 162, 168 (2005) (internal quotation marks omitted).  At Step 3, the court decides "whether the opponent of the strike has proved purposeful racial discrimination."  Id. (internal quotation marks omitted).  The Supreme Court has warned courts not to speculate about a prosecutor's potential reasons for a strike because "[t]he Batson framework is designed to produce actual answers . . . . [I]t does not matter that the prosecutor might have had good reasons . . . [;] [w]hat matters is the real reason [the jurors] were stricken."  Id. at 172 (citation and internal quotation marks omitted).

State court decisions.

The Superior Court judge rejected petitioner's Batson claim, finding no prima facie case.  Soon after trial, the U.S. Supreme Court held that California

courts had been using the wrong standard for the prima facie case. Id. at 173. At Step 1, Batson requires showing only an inference of discrimination, but California courts had interpreted this to mean a "strong likelihood." Id. at 166. The Supreme Court held that "California's 'more likely than not' standard is at odds with the prima facie inquiry mandated by Batson." Id. at 173.

On direct review, the California Court of Appeal ruled that the Superior Court's decision was "not entitled to deference" because it used the legal standard that Johnson had discredited. People v. Shirley, No. C050173, 2007 WL 1302512, at *4 (Cal. Ct. App., May 4, 2007). The Court of Appeal thus reviewed the Batson claim de novo and concluded that petitioner failed to establish Baston's prima facie showing. Id. at *4–5.

Contrary to.

On federal habeas, petitioner claims the Court of Appeal applied the wrong legal standard. If true, that error would allow this court to grant relief under 28 U.S.C. § 2254(d)(1). While the Court of Appeal articulated the correct standard—"whether under all the relevant circumstances, a reasonable inference is raised of racial discrimination," Shirley, 2007 WL 1302512, at *4—the court based its prima facie analysis on the discredited, pre-Johnson, standard articulated by the

page 4

California Supreme Court in People v. Box, 5 P.3d 130 (Cal. 2000).  The Court of Appeal held that, "when the 'record suggests grounds upon which the prosecutor might reasonably have challenged the jurors in question, we affirm.'"  Shirley, 2007 WL 1302512, at *4 (quoting Box, 5 P.3d at 153 (internal quotation marks omitted)).

The statement from Box is contradicted by the Supreme Court's holdings in Batson and Johnson.  Box bound the Court of Appeal to deny the Batson claim even if petitioner raised an inference of discrimination, if there was some ground upon which the prosecutor might have legitimately challenged the jurors.  Misguided by this rule, the Court of Appeal went on to speculate about possible race-neutral reasons Shirley's prosecutor might have had for the strikes.  Id. at *4–5.  This kind of speculation is precisely what the Supreme Court forbids:  "The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained."  Johnson, 545 U.S. at 172.

Under the Court of Appeal's view, raising an inference of discrimination is no longer enough for Batson Step 1.  The defendant must also negate any potential legitimate grounds for the strike, otherwise the court must deny the Batson claim without even asking the prosecutor to justify the strike at Step 2.  This runs afoul of

the Supreme Court's holding that it "did not intend the first step to be so onerous that a defendant would have to persuade the judge—on the basis of all the facts, some of which are impossible for the defendant to know with certainty—that the challenge was more likely than not the product of purposeful discrimination." Id. at 170.

According to Supreme Court precedent, all the defendant must do to satisfy Batson Step 1 is "produc[e] evidence sufficient to permit the trial judge to draw <u>an inference</u> that discrimination has occurred." Id. (emphasis added). The Court of Appeal impermissibly required far more in applying the rule from Box. As the Ninth Circuit recently held in criticizing the Box rule, "the existence of 'grounds upon which a prosecutor could reasonably have premised a challenge,' does not suffice to defeat an inference of racial bias at the first step of the Batson framework." Johnson v. Finn, 665 F.3d 1063, 1069 (9th Cir. 2011). Another panel of the Ninth Circuit criticized the California Court of Appeal and a federal district court for asking "whether the record could support race-neutral grounds for the prosecutor's peremptory challenges" because "this approach did not adequately protect [petitioner's] rights." Williams v. Runnels, 432 F.3d 1102, 1108 (9th Cir. 2006). In line with Ninth Circuit caselaw, I conclude that the Court of Appeal's decision was contrary to the Supreme Court's holdings in Batson and Johnson and

thus "contrary to . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1).

De novo review.

Reviewing the matter de novo, this court finds that petitioner has raised an inference of discrimination. Petitioner and the two jurors who were struck fall within a "cognizable racial group," as required by Batson. Batson, 476 U.S. at 96. Petitioner may "rely on the fact . . . that peremptory challenges . . . permit[] 'those to discriminate who are of a mind to discriminate.'" Id. To make out the prima facie case, petitioner "must show that these facts and any other relevant circumstances raise an inference that the prosecutor used [the peremptory challenges] to exclude the veniremen from the petit jury on account of their race." Id.

The Ninth Circuit has held that showing an inference of discrimination requires a "minimal burden." Finn, 665 F.3d at 1071. Statistics often "provide support for an inference of discrimination." Turner v. Marshall, 63 F.3d 807, 813 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc). Our circuit has found an inference of discrimination when a prosecutor struck five of nine black prospective jurors, Turner, 63 F.3d at 812–13, three of four black prospective jurors, Williams, 432 F.3d at 1107, and

five of six black prospective jurors, Paulino v. Castro, 371 F.3d 1083, 1090–91 (9th Cir. 2004).

In petitioner's case, five of the fifty-five people in the venire were black. Shirley, 2007 WL 1302512, at *5. Two of the black potential jurors were excused by stipulation, id.: one black potential juror, who had a brother with a criminal history, said she'd have trouble sitting in judgment of another person and the other was excused because he had the flu. That left just three black members of the venire, and the prosecutor struck two of them. Shirley, 2007 WL 1302512, at *5. Though one black juror did serve on the jury, id., the prosecutor's decision to strike two of the three strikeable black jurors supports an inference of racial discrimination.

In addition to statistics, petitioner uses a comparative juror analysis to raise an inference of discrimination. While petitioner conducts the comparative juror analysis on both of the black jurors who were struck, Lesley L. and Rita O., his discussion of the strike of Rita O. is the more troubling. Rita O. had graduated from high school three years before and was employed at Walgreens as a photo developer. She said she was eager to be a juror and would follow the law faithfully. She also indicated that she had experience making "tough calls." Nonetheless, the prosecutor struck her.

Without any explanation from the prosecutor, the Court of Appeal made up its own. It guessed the strike might have been a result of Rita O.'s youth. Id. Yet the prosecutor didn't strike Juror Number 3, a senior at Sacramento State who lived at home with his parents. Id. at *5 n.10. Juror Number 3 made it on to the jury despite his youth. The Court of Appeal unconvincingly distinguishes Rita O. from Juror Number 3 on the ground that, while both were young, Juror Number 3 "worked as the manager of a gym, a position that involves decision making." Id. The Court of Appeal also suggested that the prosecutor might have been seeking a "strategically balanced" jury and that "one young juror on the panel was sufficient." Id.

While these might have been the prosecutor's reasons, we have no evidence that they were. And the Supreme Court has warned us about inventing reasons to explain why the prosecutor might have struck a juror. Under Batson and Johnson, I can't credit the Court of Appeal's reasons distinguishing Rita O. from Juror Number 3. Nor am I comforted by the state's attempt, in its briefing, to draw a meaningful distinction between Rita O.'s use of the words "um-hum" and "yes." When Rita O. was asked whether she "make[s] some tough calls," she said "um-hum." After being prompted for a yes or no answer, she said "yes." The state argues that "[i]t is fair to infer that Ms. O's answer '[u]m-hum' . . . reasonably

weakened the prosecutor's confidence in her ability to make tough calls." But this is just more speculation as to what the prosecutor's reasons might have been, and highly implausible to boot. Having seen my fair share of the word "um-hum" on trial transcripts, it's quite clear to me that that's just how a lot of lay people speak, rather than using a crisp "yes" or "no" as lawyers and judges would prefer.

The statistic that the prosecutor struck two of the three black jurors not already removed from the venire, combined with the comparative juror analysis of Rita O.'s strike, is sufficient to raise an inference of racial discrimination. Without hearing the prosecutor's actual reasons for the strikes, this court cannot move on to Steps 2 and 3 of Batson.

Evidentiary hearing.

AEDPA prevents this court from ordering an evidentiary hearing if the petitioner "has failed to develop the factual basis of a claim" in state court. 28 U.S.C. § 2254(e)(2). But in this case, it was the state court, not the petitioner, that prevented the relevant facts from coming into the record when it prematurely cut off the Batson inquiry at Step 1. So section 2254(e)(2) doesn't prevent a hearing here. See Williams v. Taylor, 529 U.S. 420, 432 (2000). Nor does Cullen v. Pinholster, 131 S. Ct. 1388 (2011), bar an evidentiary hearing. See Finn, 665

F.3d at 1069 n.1.  This court has already determined, based on the record before the state court, that the California Court of Appeal's decision doesn't qualify for AEDPA deference under 28 U.S.C. § 2254(d)(1).  Cf. Cullen, 131 S. Ct. at 1398.  An evidentiary hearing is both permissible and necessary to determine whether the prosecutor violated Batson.

    Therefore, this court shall hold a hearing where the state may present evidence of any race-neutral reasons the prosecutor had for the strikes.  See, e.g., Paulino, 371 F.3d at 1092.  In coordination with the clerk and this court, the parties shall select a date and time for the hearing, not more than sixty days from the issuance of this order.

    January 29, 2013

                                        **ALEX KOZINSKI**
                                        Chief Circuit Judge
                                        Sitting by designation
                                        28 U.S.C. § 291(b)